**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ANTHONY FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
|  | ) Case No. _____ |
| v. | ) ) |
|  | ) JURY TRIAL DEMANDED |
| SOUTHCROSS ENERGY PARTNERS, L.P., SOUTHCROSS ENERGY PARTNERS GP, LLC, BRUCE A. WILLIAMSON, DAVID W. BIEGLER, ANDREW A. CAMERON, NICHOLAS J. CARUSO, JR., JASON H. DOWNIE, JERRY W. PINKERTON, RANDALL S. WADE, AMERICAN MIDSTREAM PARTNERS, LP, AMERICAN MIDSTREAM PARTNERS GP, LLC, and CHEROKEE MERGER SUB LLC, | ) ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.     This action stems from a proposed transaction announced on November 1, 2017 (the "Proposed Transaction"), pursuant to which Southcross Energy Partners, L.P. ("SXE") and Southcross Energy Partners GP, LLC ("SXE GP," and together with SXE, "Southcross") will be acquired by American Midstream Partners, LP ("AMID"), American Midstream GP, LLC ("AMID GP"), and Cherokee Merger Sub LLC ("Merger Sub," and collectively with AMID and AMID GP, "American Midstream").

2. On October 31, 2017, SXE GP's Board of Directors (the "Board" or "Individual Defendants") caused Southcross to enter into an agreement and plan of merger (the "Merger Agreement") with American Midstream. Pursuant to the terms of the Merger Agreement, Merger Sub will merge with SXE, with SXE surviving as a wholly owned subsidiary of AMID (the "Merger"). If the Merger is completed, unitholders of SXE (other than SXE GP and its affiliates) will receive 0.160 common units of AMID for each SXE common unit they own. Immediately following completion of the Merger, it is expected that SXE's current unitholders will own approximately 5% of the outstanding AMID common units.

3. Concurrently with the execution of the Merger Agreement, on October 31, 2017, AMID and AMID GP entered into a contribution agreement (the "Contribution Agreement") with Southcross Holdings LP ("Southcross Holdings"), which indirectly owns 100% of the limited liability company interests of SXE GP. Pursuant to the Contribution Agreement, Southcross Holdings will contribute to AMID and AMID GP its equity interests in a new wholly owned subsidiary ("SXH Holdings"), which will hold substantially all of the current subsidiaries (Southcross Holdings Intermediary LLC, Southcross Holdings Guarantor GP LLC, and Southcross Holdings Guarantor LP) and business of Southcross Holdings (the "Contribution").

4. On January 11, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SXE common units.

10. Defendant SXE is a Delaware limited partnership and maintains its principal executive offices at 1717 Main Street, Suite 5200, Dallas, Texas 75201.  SXE's common units are traded on the NYSE under the ticker symbol "SXE."  SXE is a party to the Merger Agreement.

11. Defendant SXE GP is a Delaware limited liability company and the general partner of SXE.  Its Board and executive officers manage SXE.  Southcross Holdings indirectly owns 100% of and controls SXE GP.  SXE GP is a party to the Merger Agreement.

12. Defendant Bruce A. Williamson ("Williamson") is the Chairman of the Board, and the President and Chief Executive Officer ("CEO") of SXE GP.

13. Defendant David W. Biegler ("Biegler") is a director of SXE.

14. Defendant Andrew A. Cameron ("Cameron") is a director of SXE.

15. Defendant Nicholas J. Caruso, Jr. ("Caruso") is a director of SXE.

16. Defendant Jason H. Downie ("Downie") is a director of SXE.

17. Defendant Jerry W. Pinkerton ("Pinkerton") is a director of SXE.

18. Defendant Randall S. Wade ("Wade") is a director of SXE.

19. The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant AMID is a Delaware limited partnership and a party to the Merger Agreement.

21. Defendant AMID GP is a Delaware limited liability company, the general partner of AMID, and a party to the Merger Agreement.

22. Defendant Merger Sub is a Delaware limited liability company, a wholly-owned subsidiary of AMID, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public unitholders of SXE (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of November 6, 2017, SXE had approximately 48,614,187 common units outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i)

whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of Southcross and the Proposed Transaction*

30.     SXE is a Delaware limited partnership formed in April 2012. It is a master limited partnership, headquartered in Dallas, Texas, that provides natural gas gathering, processing, treating, compression and transportation services and natural gas liquids ("NGLs") fractionation and transportation services. SXE also sources, purchases, transports, and sells

natural gas and NGLs. SXE's assets are located in South Texas, Mississippi, and Alabama and include two gas processing plants, one fractionation plant, one treating facility and approximately 3,100 miles of gathering and transportation pipeline. The South Texas assets are located in or near the Eagle Ford shale region.

31. Southcross Holdings indirectly owns 100% of SXE's general partner, SXE GP, and therefore controls SXE. Southcross Holdings owns all of SXE's subordinated and Class B convertible units, and 54.6% of SXE's common units. SXE GP owns an approximate 2.0% interest in SXE and all of SXE's incentive distribution rights.

32. Following the emergence of Southcross Holdings from its Chapter 11 reorganization proceeding on April 13, 2016, EIG Global Energy Partners, LLC and Tailwater Capital LLC each indirectly own approximately one-third of Southcross Holdings, and a group of consolidated lenders under Southcross Holdings' term loan own the remaining one-third of Southcross Holdings.

33. On October 31, 2017, the Individual Defendants caused SXE to enter into the Merger Agreement, pursuant to which Southcross will be acquired by American Midstream.

34. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by SXE's unitholders, they will receive 0.160 common units of AMID for each SXE common unit they own.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

35. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

36. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

37. The Registration Statement omits material information regarding SXE's financial projections, AMID's financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction, Jefferies LLC ("Jefferies").

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. Although the Registration Statement provides stockholders with certain financial projections of SXE, it fails to disclose certain material projections that were relied upon by Jefferies in performing its valuation analyses. For example, the Registration Statement indicates that, in its Discounted Cash Flow Analysis of SXE, Jefferies used SXE's estimates of "free cash flows," which were defined as Adjusted EBITDA, less interest expense, less maintenance capital expenditures and less growth capital expenditures. Rather than disclose these free cash flows, defendants disclosed in the Registration Statement SXE's projected "distributable cash flow," which are defined differently as Adjusted EBITDA, plus interest income and income tax benefit, less cash paid for interest (net of capitalized costs), income tax expense and maintenance capital expenditures. By disclosing this different measure of cash flows, SXE's unitholders could reasonably (but incorrectly) believe that the "distributable cash flow" projections disclosed in the Registration Statement were the cash flows that Jefferies used in its Discounted Cash Flow Analysis of SXE. Accordingly, the Registration Statement must disclose the actual "free cash

flows," and their line items, for years 2017 through 2020 that were used by Jefferies in its analysis.

40. Further, the Registration Statement discloses certain projections of SXE and AMID for non-GAAP (generally accepted accounting principles) metrics, including adjusted EBITDA and distributable cash flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

41. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by SXE or AMID may not be comparable to similarly titled amounts used by other companies." As such, unitholders are entitled to the line item projections used to calculate SXE's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

42. The Registration Statement indicates that the parties to the Merger Agreement anticipate the Proposed Transaction to result in certain cost savings and synergies, but the Registration Statement fails to quantify and disclose the amount of those expected synergies, and also fails to disclose whether those synergies were incorporated into Jefferies' valuation analyses.

43. With respect to Jefferies' Selected Public Company Analysis of each of SXE and

AMID, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Jefferies in its analysis.

44. With respect to Jefferies' Selected Transaction Analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Jefferies in its analysis. Further, given the fact that the lowest observed TV/ FY+1 ADJ EBITDA multiple of the selected transactions was 11.2x, the Registration Statement must explain Jeffries' basis for selecting the multiple reference range of 9.0x to 10.0x to apply to SXE's estimated 2018 Adjusted EBITDA.

45. With respect to Jefferies' Discounted Cash Flow Analysis of SXE, the Registration Statement fails to disclose: (i) the "free cash flows" of SXE for years 2017 through 2020, and the line items thereto, as used by Jefferies in its analysis; (ii) the specific inputs and assumptions underlying the discount rate range of 10.6% to 11.6% used by Jefferies in its analysis; (iii) SXE's cash, cash equivalents, and total debt as of June 30, 2017; and (iv) the perpetuity growth rates implied by Jefferies' analysis.

46. With respect to Jefferies' Discounted Cash Flow Analysis of AMID, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate range of 15.6% to 16.6% used by Jefferies in its analysis; (ii) AMID's cash, cash equivalents, and total debt as of June 30, 2017; and (iii) the terminal exit multiples implied by Jefferies' analysis.

47. With respect to Jefferies' Premiums Paid Analysis, the Registration Statement fails to disclose the individual premiums for each of the transactions observed by Jefferies in its analysis.

48. The omission of this material information renders the Registration Statement false

9

and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of the Financial Advisor to the SXE Conflicts Committee; and (ii) Certain Unaudited Financial Projections of SXE and AMID.

49.	The Registration Statement omits material information relating to potential conflicts of interest of Jefferies. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

50.	The Registration Statement states that, "[i]n the past, Jefferies has provided financial advisory services to the SXE Conflicts Committee and financial advisory services to AMID and may continue to do so and has received, and may receive, fees for the rendering of such services." The Registration Statement, however, fails to disclose the nature, timing, and terms of Jefferies' past financial advisory services to AMID, including the amount of compensation that Jefferies has earned in connection with those services.

51.	The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of the Financial Advisor to the SXE Conflicts Committee; and (ii) Background of the Merger.

52.	The Registration Statement omits material information relating to the background leading to the Proposed Transaction. SXE's unitholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

53.	The Registration Statement indicates that SXE entered into confidentiality agreements with approximately 27 parties that expressed an interest in engaging in a transaction

with SXE.  The Registration Statement, however, fails to disclose the terms of the confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to SXE.  Notably, it is likely that such provisions do exist because Section 5.2(a)(vii) of the Merger Agreement provides that SXE shall not "release any Person from, or modify or waive any provision of, any standstill, confidentiality or similar agreement, in each case, related to a sale of SXE or any of its material Subsidiaries."  This information is particularly important to stockholders, because several parties other than AMID submitted offers to acquire SXE, and at least one party (Company D) submitted a proposal for a transaction with SXE while SXE was in an exclusivity period with AMID that ultimately lasted from August 19, 2017 to October 30, 2017 (after three extensions).

54. Relatedly, the Registration Statement fails to disclose the actual economic and other terms proposed by each of the companies that submitted proposals to engage in a transaction with SXE, including the terms of Company D's October 4, 2017 proposal, which SXE ignored in light of the exclusivity agreement that SXE entered into with AMID.  SXE's unitholders are entitled to understand what offers were made to and rejected by SXE so that they can assess for themselves whether the Proposed Transaction with AMID is the best transaction possible.

55. The omission of this material information renders the Background of the Merger section of the Registration Statement false and misleading.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SXE's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Southcross**

57.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58.   The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Southcross is liable as the issuer of these statements.

59.   The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

60.   The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61.   The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

62.   The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63.   By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and

Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and American Midstream

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants and American Midstream acted as controlling persons of Southcross within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Southcross and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants and American Midstream was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

69. American Midstream also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

70. By virtue of the foregoing, the Individual Defendants and American Midstream violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants and American Midstream had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

Case 3:18-cv-00179-D   Document 1   Filed 01/24/18   Page 15 of 15   PageID 15

plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 24, 2018

**KENDALL LAW GROUP, PLLC**

By: */s/ Joe Kendall*

**OF COUNSEL:**

Joe Kendall
Texas Bar No. 11260700

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

jkendall@kendalllawgroup.com
Jamie J. McKey
Texas Bar No. 24045262
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

*Attorneys for Plaintiff*